Our final case for argument is 25-1302, iCharts v. Tableau Software. May it please the Court, my name is Will Hubbard and I'm here on behalf of iCharts. I'd like to start by briefly highlighting a few key features of the technology in these certed patents. The patents claim systems and methods for generating and sharing charts that are both interactive and self-contained. A chart is interactive when it can receive user input and then re-render or update its display using that input as a parameter. A chart is self-contained when the chart can re-render itself without relying on the system that created the chart in the first place. In other words, the chart updates locally without the involvement of its generation software. As iCharts explained to the complaint, the re-rendering is performed client-side rather than server-side. That's Joint Appendix 1332, paragraphs 26 and 36. Importantly, the asserted patents do not simply claim interactive charts or self-contained interactive charts. Rather, the patents claim platforms that combine chart templates with data to produce self-contained interactive charts and then share them without losing those features. Turning to Alice Step 1, while there is no definitive test for determining whether a patent is directed to an abstract idea, this court has noted that a key consideration is whether a patent claims an improvement to computer technologies. Here, there is really no dispute that the patents claim such improvements. Plainly, the patents relate to computer technologies. The district court agreed, describing the asserted patents as being directed towards generating and sharing self-contained interactive charts on computers. This concept of generating and sharing self-contained interactive charts is inherently computer-based, given that a chart is interactive when it re-renders itself based on user input and a chart is self-contained when that change comes from code that is run locally. What's the computer technology? It's software, right? That's correct, Your Honor. It's passing information. That's correct, Your Honor. But this court has made clear in cases like DDR and Infish that software technologies can provide the benefits that indicate that a patent is not directed to an abstract idea. But in cases like that, it was because it improved the functioning of the computer as a whole. It, for example, reduced memory or expedited processing power or something along those lines. So it was software, the end result of which was not just to better automate the software program that the user was seeking, but rather to improve its functioning of the computer. So how does this do that? Yes, Your Honor. There are three respects in which the claimed invention improves the operation of the computer system, the networked computer system. The first is that chart interactivity being conducted client-side allows for re-rendering without repeated calls to a distant server and without the need for special software on the user's computer, thereby improving data security and scalability. Second, unlike some interactive charts, the interactive charts produced by the patented platforms are portable. They can be copied from one environment to another while retaining their interactive quality. And then third, the claimed invention automated. I certainly don't see how the second one has anything to do with improving a computer. It improves the utilization of the chart by the user, but it doesn't improve the computer or the network. So it improves the ability to share interactive charts in a networked environment. But that's just an improvement to Excel makes spreadsheets more readily usable by the user. That's not an improvement of the computer. That's an improvement of the software using experience. And that's not what we've ever said amounts to a technological improvement in these kinds of software cases. So I understand the distinction that you're making, and I agree that that distinction is a meaningful one in the sense that the charts don't make the network run faster. But by making the charts self-contained, you improve the scalability so that you can use charts in the networked environment without overloading the networked environment. Similar concerns came up, for example, in this court's BASCOM decision. In that case, as you recall, it was an issue of filtering technologies where the innovation was shifting filtering to the server rather than being run individually on the user's computer. And there the court said that shifting that processing to the server did provide a technological improvement because it supported scalability. Where does the claim describe how to achieve re-rendering, which apparently is key here? So the claims do not describe re-rendering. Our position is that that is a term that would be understood by a person of ordinary skill in the art based on the specification. But the claim itself does not describe the process of re-rendering. So I'd like to turn to the second consideration. Yes? It seems to me that what the claims do is that they're claiming a result. And there's nothing there that I see that tells me either how to get there or that the claim itself is directed to that result. Yes, Your Honor. So we disagree with the premise that the claims do not describe how to get to the result. And in particular, the claims describe a four-part architecture involving the collection of data, either by uploading or by selecting a data feed, the combination with a chart template, the generation of the interactive chart, and then the sharing of the interactive chart in a fashion that preserves those qualities. The patents can also describe a three-part process for interactivity where the chart is rendered. It is then accepting a user input from the local user, using that input as a parameter to then re-render. So as an initial matter, we believe that that does provide sufficient detail, the how that you were asking about, how does the invention perform this feature. How? The claim doesn't tell you how the interactivity allows for the re-rendering. It doesn't explain anything. So the claims themselves do not describe that. We agree. We agree. And the specification doesn't describe it in detail, but the specification does do two important things. The specification provides examples of working embodiments. Those examples are the screenshots that run for many pages, the figures at the beginning of all three patents, the screenshots from iChart's working embodiment of the invention. Moreover, as the Court noted in EnFISH, much of the advancement made in computer technology consists of improvements that, by their very nature, may not be defined by particular physical features, but rather the logical structures and processes. That is what we submit the patent provides, that provides the logical structures and processes, and the more fine-grained details that you are asking about, that was left to the ordinary skill of the art. So there's these three considerations that the Court has identified in trying to determine if a patent is directed to an abstract idea. One is this issue, and I understand that you've got some concerns about it, with the technological improvement. Another is this question about functionality. But there's a third consideration as well, and that's whether or not the patents target some long-practice, real-world activity and simply says, do it on a computer. And here the District Court said that that was the case, and we disagree. And that's because the District Court didn't just strip generic computer aspects from the claims. Rather, the District Court over-generalized the claims. Fundamentally, the District Court conflated interacting with a chart with a chart being interactive. The comparison that the District Court made was to a printed map, a printed map that could then be shared and then interacted with by folding. But that is interacting with a static map. That is not a chart that is re-rendered or recreated based on a user input. Under the District Court's view, for example, a chart would be re-rendered simply by moving closer to the chart because you are interacting with the chart. The fundamental problem is that this self-contained interactive chart does not exist outside of the computing environment. This Court is warned against such over-generalizations at Step 1, for example, in Data Engine v. Google, saying that it is not enough to merely trace the invention to some real-world analogy. I'd like to turn to the second step of the Alice analysis. This step, as you know, evaluates whether the claims involve more than a combination of the abstract idea with conventional, routine, and well-understood features. As a result, to the extent features are not considered in Step 1, claim features are not considered in Step 1, they should be considered in Step 2. Courts must evaluate both whether individual claims as well as the ordered combination of those elements is conventional. As you know very well, this often raises factual questions under the Atrix decision. The District Court found that the combination of elements was conventional because it involved only a combination of the abstract idea, routine applications of Flash, and prior art uses of Google Spreadsheets. This Court emphasized in BASCOM that Alice Step 2 requires more than just this individual element analysis, but rather some factual support as to why the combination would be conventional. Unfortunately, the District Court engaged in the kind of ex-post hindsight bias approach that plagues the obviousness analysis, using the patent itself to describe the combination of elements and then declaring it to be conventional, even though I-Charts alleged in its complaint that this combination was unconventional, even though I-Charts alleged in its complaint that the platform, the claimed platform, provides substantial benefits over the prior art. In fact, far from conceding that the combination of Flash and Google Spreadsheets was somehow conventional, the asserted patents highlight the shortcomings of Google Spreadsheets insofar as it cannot support self-contained interactive charts, and as a result, requires repeated calls to a distant server, increasing network traffic. Now, I want to also highlight the Court's statements regarding Flash, Adobe Flash. The Court said that the combination of elements was conventional because Adobe Flash was a conventional tool conventionally applied. There's no factual support whatsoever that this combination was conventional, and in doing so, the Court made an unsupported, incorrect factual finding at the pleading stage. Even worse, the District Court improperly ignored contrary allegations regarding the use of Flash. I-Charts alleged in its complaint that its own system was not created entirely using Flash. Rather, there are additional programming languages involved in creating other components, including programming in Java. We're into your rebuttal time. Do you wish to save it? Yes, Your Honor. Thank you.  May it please the Court, Ryan Ties on behalf of Tableau. Good morning, Your Honors. First, I'm just going to jump right into your questions opposed to opposing counsel. The first, you're right. All these claims do is pass information, obtain information, store information, and display information. Historically, through this Court's precedence, that's an abstract idea. Nothing to the next question is, how does it improve computer technology? There is no improvement to computer technology here. The alleged client-side rendering is nowhere found in the claims. And if you look at the claims, the representative claims, one claim talks about showing charts on websites. So obviously, the website is not on the client device. You go to the website, and it re-renders on that device. That's not client-side re-rendering. So, what do the patents claim? You're right, Judge Reyna. It is functional results. And that is the greatest indicator of an abstract idea. It doesn't explain how to achieve anything. It merely says, enabled, configured to, all results-oriented claims. So what the Certis patents are trying to get at is whether iCharts can patent the idea of packaging a chart in a format that can be carried to other websites and retain interactivity, all using conventional technology. Again, they never explain how to achieve that interactivity or the self-contained. It just says, that is the goal. And the district court properly found all results-oriented and searched over and over again for the how, and even asked for supplemental briefing about how the particular element of the claim that patentee or plaintiff... There's a lack of specificity in the claims. 100% on how to achieve anything. It is aspirational, goal-oriented. Which may be true, but what does a claim have to say in order to lend more specificity? I think a good example would be the Contour IP case, in which there was a specific improvement to the technology. And in that case, it was simultaneously creating a high and low version of a video, sending the low version to the remote device to enable the user to control. How do you distinguish this between antfish and data? I think in all those cases, there's a clear demarcation. Is there an improvement to the computer technology or what you're trying to build? Here, there's no improvement in the claims, and you're required to look at the claims. In each of those other cases where this court has found patent-eligible, there is an improvement to the claims. The Contour IP holdings, the improvement to how Excel works, where you place a filter... Section 101 is envisioned and is supposed to be, and I guess still is supposed to be, a low threshold. And your argument about specificity concerns me in that aren't we reaching into Section 112? I think Section 112 is separate, and as a district court, we may have Section 112 problems, but as a threshold matter, is the claim directed to an abstract idea? And without the specificity, and more... It's less about the specificity, but more about claiming results, right? That is not an invention. It is an aspiration, and there has to be something in the claim that is the improvement, and opposing counsel could not point to anything in the claim that is the improvement. And if you go back to the hearing at the district court, the same question was posed, and the counsel at the district court level for I-Charts went through the claims and said everything was conventional or results-oriented except for one element, and that's the self-contained interactive chart. But nowhere in the claims does it say, how do you create the self-contained? What makes it interactive, and how is that retained? That is nowhere in the claims. So again, it's aspirational, and that's important. And so this is an abstract... Isn't the self-contained nature of the interactive device an improvement? Well, it asks, you know, what does self-contained mean? They point to flash as achieving the self-contained component.  Excuse me? When they say self-contained, aren't we now entering into the area of specificity? I don't believe so. I think it's still result-oriented, is what self-contained... How do you achieve the self-contained is the question. The claims don't answer that question. So what's the invention? Just having a self-contained chart? The claims are directed to... Yes, an abstract idea. Here, all the claims do is receive, share, and display data. And that is historically, with this court's precedent, is an abstract idea. And nothing in these claims is any different. I think GoTV from 2026 is a great example of why the claims here don't pass the eligibility requirement. And if you look at those claims, again, all results-oriented and did not provide a solution in the claims, and nothing in the specification either. And iCharts admitted there's nothing in the claims that identified the technical improvement. And your job is to look at the claims. Is there an improvement? So... Not unless you have any other questions, I would submit on this record. Okay, thank you. Mr. Hubbard, do you have some rebuttals? Thank you, Your Honor. I think that I've heard a new abstract idea opposed by my friend on the other side. The functionality concerns do not relieve the patent challenger of the obligation to follow the analysis prescribed in Alice, right? There must be an abstract idea identified. And secondly, we consider whether additional features rendering it an inventive concept. My friend on the other side said that it was to... That changes the analysis dramatically from what the district court said. That's a very different idea. Now, the reason that is important, because if you make that change, the particular features of the invention that previously were considered at Step 1 now need to be considered at Step 2. And doing so puts this case on all fours with this Court's BASCOM decision. Um... All right, in the BASCOM decision, the prior art described user-customizable filtering of Internet content on local computers. The patents in that case claimed a system that shifted this filtering to a shared server, and this Court found that to be an unconventional change. Similarly here, if the idea at Step 1 is framed at a very high level of abstraction, it's just manipulating data, all of the features of the claimed invention regarding the self-contained interactive nature must be considered at Step 2. And as in BASCOM, we have shifted where in the networked environment the processing occurs. In BASCOM, it was shifted from the local user computer to the server. In this case, we are shifting it from the server to the local user. So it is processed locally. So when the website loads on the user's computer, the self-contained chart is pulled at that moment, and then interaction is run locally at that point without being a call to a remote server every time. Initially once, but then thereafter each interacted in contrast with Google Spreadsheets, every time you move your mouse to interact, Google Spreadsheets would be sending you an updated picture and an updated picture and an updated picture. Thank you very much.